2007 WY 194

**Dustin Everett Ezra CRAPO,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 06–258.

Supreme Court of Wyoming.

Dec. 11, 2007.

Representing Appellant: Diane M. Lozano, State Public Defender; Ryan R. Roden, Deputy Public Defender; Tina N. Kerin, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Timothy Justin Forwood, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Dustin Crapo pled guilty to the crime of receiving, concealing, or disposing of stolen property. As part of his sentence, the district court ordered Mr. Crapo to pay restitution. He now challenges that restitution order. We reverse.

### ISSUE

[¶ 2] We rephrase the issue presented for our review as follows:

Did the district court have statutory authority to order Mr. Crapo to pay restitution to burglary victims when Mr. Crapo did not plead guilty to the burglaries or conspiracy to commit the burglaries and did not, as part of his plea agreement, agree to pay restitution to the burglary victims?

### FACTS

[¶ 3] The State charged Mr. Crapo with one count of receiving, concealing, or disposing of stolen property in violation of Wyo. Stat. Ann. § 6–3–403 [1] and one count of conspiracy to receive, conceal, or dispose of stolen property in violation of Wyo. Stat. Ann. §§ 6–3–403 and 6–1–303.[2]

[¶ 4] Several days before the trial was scheduled to begin, Mr. Crapo and the State entered into a plea agreement. Mr. Crapo agreed to plead guilty to receiving, concealing, or disposing of stolen property. In exchange, the State agreed to drop the conspiracy charge and agreed to recommend a maximum sentence of three to five years in the Wyoming State Penitentiary. The only mention of restitution at the change of plea hearing was the court's advisement to Mr. Crapo that he "could be required to pay restitution." The actual plea occurred as follows:

The Court: Mr. Crapo, how do you plead to Count 1 of this Information?

[Mr. Crapo]: Guilty, Your Honor.

The Court: Generally, between October 26th of 2005 and January 5th of 2006, were you in Natrona County?

[Mr. Crapo]: Yes, I was.

The Court: Did you come into possession of—I think it was primarily hand and power tools at that time?

[Mr. Crapo]: Yes, Your Honor.

The Court: Did you understand that those had been stolen?

[Mr. Crapo]: Yes, Your Honor.

The Court: Do you agree that the value of those tools exceeded $1,000?

---

1. Wyo. Stat. Ann. § 6–3–403 (LexisNexis 2007) states in relevant part:

    (a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:

    (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more.

2. Wyo. Stat. Ann. § 6–1–303 states in relevant part:

    (a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

[Mr. Crapo]: Yes, Your Honor.

The Court: And all of that occurred in Natrona County?

[Mr. Crapo]: Yes, Your Honor.

The Court: [Prosecutor]?

[Prosecutor]: I think that's satisfactory. Thank you.

The Court: The Court finds that Mr. Crapo is alert, he's not under the influence of anything that would adversely affect his ability to understand the proceedings, and he's competent to enter a plea; the plea has been entered knowingly and voluntarily, there are no improper inducements or conditions, the plea is free of coercion; and Mr. Crapo understands the charge and the consequences, he consulted with competent counsel, and has established an appropriate factual basis. So I will accept and enter the plea of guilty and request a Presentence Investigation.

(Paragraph breaks omitted.) The order for the Presentence Investigation Report (PSI) included a requirement "that counsel for the State and Defense shall file and serve on opposing counsel, not less than three (3) working days prior to sentencing, any material objections as to the accuracy of the Presentence Investigation Report concerning: ... 3.) Restitution and costs." Neither Mr. Crapo nor the State appears to have objected to the PSI prior to the sentencing hearing.

[¶ 5] The PSI identified six individuals whose property was stolen in six burglaries occurring in the Casper area in late 2005. All six individuals were listed in the PSI as victims for restitution purposes, although only four of those individuals sought restitution. Randy Colpits requested $3,800. John Gaviotis requested $4,944.55 and Robert Erickson requested $6,800. Andrew Hintz sought $500 in restitution. Dale Zitterkopf did not request restitution. Jeremy Eynetich could not be located and no restitution claim was made on his behalf.

[¶ 6] At the sentencing hearing, defense counsel expressed his concern regarding the adequacy of the restitution information presented to the district court:

Regarding the restitution, Your Honor—and this is problematic in this case. This case involves several burglaries and then [Mr. Crapo] having possession of some of the items from some of those burglaries. I looked at the police report, and it indicated that $2,800 of the items from the Gaviotis theft were recovered from [Mr. Crapo]'s vehicle; also, $220 of the items from the Erickson burglary were recovered when he was arrested. I couldn't find any other items that—that were actually in his possession when they arrested him. Again, we have—as [the prosecutor] indicated, we have issues here where some property was recovered. There's people that used the property as part of their employment. They indicate that they have purchased new items. I don't know what they have purchased. So I'll just leave that matter to the—to the judgment of the Court. I just have my doubts whether the Court can make the required statutory findings based on what is contained in the—in the PSI at the bottom of page 12.

(Paragraph breaks omitted.)[3] Ultimately, defense counsel said he was leaving the matter "to the judgment of the [c]ourt."

[¶ 7] The district court also expressed some concern about restitution, but ultimately relied on the State's assurances:

The Court: It is unclear to me. Is this restitution exclusive of the matters of the items that have been seized or are going to be returned?

[The prosecutor]: Your Honor, there are some matters—the only matters that I know that are subsequently going to be seized and returned are some of the tools. As I indicated, Mr. Gaviotis's situation was discussed in the Presentence Investigation Report. Secondly, Your Honor, I would note under the order entered by the Court on June 7, 2006, any objections to restitution or costs were to be made three days before sentencing.

The Court: That is correct. And it appears to me that restitution is substantially well supported here.

---

3. In referring to page 12 of the PSI, defense counsel was directing the district court's atten-

tion to the PSI language that we have set forth in paragraph 17 of this opinion.

(Paragraph breaks omitted.) The district court went on to order restitution payable to Messrs. Colpits, Gaviotis, and Erickson for a total amount of $15,544.00. The district court denied Mr. Hintz's award because it lacked sufficient evidentiary support. Mr. Crapo now appeals the restitution order.

### STANDARD OF REVIEW

[¶ 8] The standard of review that we employ in evaluating a restitution order depends upon whether the appellant is challenging the factual basis for the restitution order or is challenging the trial court's authority to make the restitution award. We previously explained:

> The distinction between whether a defendant is making a factual challenge to an order of restitution or whether he is challenging the authority of the trial court to make a particular award of restitution is an important one. Challenges to the **factual** basis of an award of restitution can be waived in certain circumstances by the defendant's voluntary actions, such as entering into a plea agreement, and then failing to make any objection at sentencing, as occurred in *Meerscheidt [v. State,* 931 P.2d 220 (Wyo.1997) ]. *See also Aldridge v. State,* 956 P.2d 341, 343 (Wyo.1998). Outside the context of a plea agreement, the failure to object to a factual determination in the awarding of restitution results in an appellate review for plain error. *See Gayler v. State,* 957 P.2d 855, [859] (Wyo.1998). In contrast, a challenge by a defendant to the **authority** of a trial court to make a particular award of restitution is reviewed on appeal under a *de novo* statutory interpretation standard whether or not the defendant objected or entered into a plea agreement. *Meerscheidt,* 931 P.2d at 223–224, 226–227. While not explicit in our decision in *Meerscheidt,* the reason for conducting a *de novo* review under such circumstances is that a court has only that authority to act which is conferred by the subject statute.

*Merkison v. State,* 996 P.2d 1138, 1141 (Wyo. 2000) (emphasis in original). Mr. Crapo contends that his challenge is to the district court's authority to order the contested resti-

tution award and asserts that the proper standard of review is *de novo.* We agree.

### DISCUSSION

[¶ 9] Mr. Crapo alleges that the district court ordered restitution for losses attributable to burglary, rather than the crime to which he pled guilty: receiving, concealing, or disposing of stolen property. Mr. Crapo contends that the district court lacked authority to impose restitution for pecuniary loss resulting from the burglaries because: (1) he was never charged with committing the burglaries; (2) the conspiracy charge was dismissed pursuant to the plea agreement; (3) he did not admit to committing the burglaries; and (4) he did not agree to pay restitution for those crimes as part of his plea agreement. The State's position is that by admitting to possessing some of the property stolen in the burglaries, Mr. Crapo was effectively admitting responsibility for all the property stolen in the burglaries. The State also contends that Mr. Crapo waived his right to contest the restitution order because he failed to file an objection to the PSI three days prior to the sentencing hearing.

[¶ 10] As an initial matter, we must address the effect of the district court's pretrial order setting a deadline for objections "to the accuracy of the [PSI] concerning: ... 3.) Restitution and costs." This Court has held that restitution is not an inherent power of the district court. Rather, it is a power that exists solely by statute. *E.g., Hampton v. State,* 2006 WY 103, ¶ 8, 141 P.3d 101, 104 (Wyo.2006). As a consequence, "[a]n order of restitution by a trial court which exceeds the authority granted by the statutes governing restitution would be void, and a void order may be challenged at any time." *Merkison,* 996 P.2d at 1141–42. We also note that the pretrial order only required objections to the accuracy of the information in the PSI. Mr. Crapo did not assert below that the PSI was inaccurate, nor does he do so now. Rather, he claims that the district court lacked the authority to order restitution for pecuniary loss resulting from any crime other than the one to which he pled guilty, possession of stolen property. Accordingly, this appeal is not precluded by

Mr. Crapo's failure to file a timely objection to the accuracy of the PSI.

[¶ 11]   A district court's authority to order restitution is governed by statute. *Hampton,* ¶ 8, 141 P.3d at 104.   Wyo. Stat. Ann. § 7–9–102 requires that a court, "upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7–9–103 and 7–9–114."   Wyo. Stat. Ann. § 7–9–103(b) specifies that "the court shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage *resulting from the defendant's criminal activity.*"   (Emphasis added.)   Additionally, Wyo. Stat. Ann. § 7–9–101 contains several definitions that are pertinent to our analysis:

(a) As used in this chapter:

(i) "Criminal activity" means any crime for which there is a plea of guilty, nolo contendere or verdict of guilty upon which a judgment of conviction may be rendered and includes any other crime which is admitted by the defendant, whether or not prosecuted.   In the case of restitution ordered under W.S. 7–13–301, "criminal activity" also includes a crime charged against the defendant;

. . .

(iii) "Pecuniary damage" means all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event, including damages for wrongful death. It does not include punitive damages and damages for pain, suffering, mental anguish and loss of consortium;

(iv) "Restitution" means full or partial payment of pecuniary damage to a victim;

(v) "Victim" means a person who has suffered pecuniary damage as a result of a defendant's criminal activities.   An insurer which paid any part of a victim's pecuniary damages shall be regarded as the victim only if the insurer has no right of subrogation and the insured has no duty to pay the proceeds of restitution to the insurer.

[¶ 12] We emphasize that a district court has authority to order restitution only for losses "resulting from the defendant's criminal activity."   Wyo. Stat. Ann. § 7–9–103(b). For an act to qualify as "criminal activity" for restitution purposes, the defendant must either plead guilty to the crime, be convicted of the crime, or admit to the crime.   Wyo. Stat. Ann. § 7–9–101(a)(i).   If the pecuniary damages do not arise from a defendant's "criminal activity" as defined by Wyo. Stat. Ann. § 7–9–103(b), a district court lacks authority to order restitution for those damages.

[¶ 13]   In *Penner v. State,* for example, the defendant was originally charged with three counts of burglary.   2003 WY 143, ¶ 3, 78 P.3d 1045, 1046 (Wyo.2003).   He entered into a plea agreement providing that he would plead *nolo contendere* to one of the burglary charges and the State would dismiss the other two charges.   *Id.,* ¶ 4, 78 P.3d at 1046.   At the change of plea hearing, the prosecutor recited the facts of one particular burglary in order to provide the necessary factual basis for acceptance of the plea.   The restitution documentation that the State relied upon at sentencing listed restitution amounts for all three burglaries, but there was no supporting documentation for the particular burglary to which Mr. Penner pled *nolo contendere.   Id.,* ¶ 6, 78 P.3d at 1047. The trial court did not order restitution at the sentencing hearing for that burglary because there was no documentation.   The court did, however, order restitution for losses resulting from the other two burglaries. *Id.,* ¶ 9, 78 P.3d at 1048.

[¶ 14]   In *Penner,* we held that trial court lacked the authority to order restitution where there was no admission of the crimes or agreement to pay restitution as part of the plea agreement. We noted that:

This case first went awry at the change-of-plea hearing when the orally announced plea agreement did not indicate whether the appellant would admit the charges that were being dismissed or would agree to pay restitution for those crimes.... The *record simply contains no admission of those crimes or express agreement to pay those amounts,* and we are not at liberty in reviewing criminal sentencing proceedings to draw from a blank record inferences

that are contrary to the appellant's interests.

*Id.*, ¶ 11, 78 P.3d at 1048 (emphasis added); *see also Van Riper v. State*, 999 P.2d 646 (Wyo.2000) (defendant was not liable for larceny of a car's contents where he specifically denied stealing the car and the contents and was not convicted of stealing the contents, though he agreed to pay restitution for damage to the car's value).

[¶ 15]   Mr. Crapo's situation is similar to that presented in *Penner.* It is undisputed that Mr. Crapo was never charged with committing any of the burglaries. Although he was charged with one count of conspiracy to conceal stolen property, in violation of Wyo. Stat. Ann. §§ 6–3–403 and 6–1–303, that charge was dismissed pursuant to the plea agreement. The record does not contain any evidence that Mr. Crapo admitted to committing those crimes, nor does it contain any evidence of an agreement by Mr. Crapo to pay restitution resulting from those crimes. The only "criminal activity" to which Mr. Crapo pled guilty or admitted, is receiving or possessing stolen property. Accordingly, the district court's authority to order restitution is limited to pecuniary damages incurred by victims arising from that criminal activity. Wyo. Stat. Ann. § 7–9–103(b); *Penner,* ¶ 11, 78 P.3d at 1048. Our review of the record, however, establishes that the restitution award was predicated upon the pecuniary loss resulting from the burglaries, not the "criminal activity" admitted by Mr. Crapo.

[¶ 16]   The State did not present any witnesses or other evidence in support of the restitution request at the sentencing hearing. Support for the restitution order must be found in the plea agreement, PSI, or Mr. Crapo's guilty plea. There is no question that Mr. Crapo possessed some of the property that was stolen in the burglaries. The PSI report identified the property that Mr. Crapo possessed. Significantly, however, the PSI reflects that all of the stolen property found in Mr. Crapo's possession was either returned to the owner or, at the time of sentencing, continued to be held by the police. We have no doubt that, if properly presented, the owners of the property are entitled to restitution for pecuniary loss occasioned by Mr. Crapo's possession of the stolen items. The problem here, however, is that there is no evidence in the record to support the conclusion that Mr. Crapo ever possessed any of the stolen property that had not been recovered.

[¶ 17]   The Restitution & Costs section of the PSI summarizes the restitution claim as follows:

> Several items taken from the Victims have been recovered and are currently being held by the Casper Police Department. The Victims have requested restitution *on the items that they have not received.* Some Victims did not include the items that they know to have been recovered and anticipate receiving back. Dale Zitterkopf stated that he has recovered most of the *stolen items* and did not care to receive any restitution from the Defendant. Andrew Hintz reported that he could not provide any documentation for the *stolen items* and has not replaced much of the *lost property.* Mr. Hintz estimated the *total value of the stolen property.* Robert Erickson reported that he had to replace most of the items that were *stolen by the Defendant.* The total balance of replaced merchandise was $6,800. John Gaviotis reported that he replaced much of the merchandise *stolen by the Defendant.* Mr. Gaviotis provided receipts from the replacement of the *taken tools.* Randy Colpits reported that he has replaced most of the *stolen equipment* and has provided receipts for the items he replaced.

(Emphasis added.) It is abundantly clear that, in the PSI, the probation agent focused on property stolen in the burglaries, rather than property Mr. Crapo possessed. Such focus is a proper basis for restitution only if Mr. Crapo agreed to pay restitution for pecuniary loss resulting from the burglaries or admitted to committing the burglaries. He did neither. The State does not contend that Mr. Crapo agreed to pay restitution for damage arising from the burglaries as part of the plea agreement. The State also does not contest Mr. Crapo's contention that the PSI restitution claims are founded upon the burglaries rather than the stolen property. In-

stead, the State apparently relies upon inferences to be drawn from Mr. Crapo's guilty plea. According to the State:

[Mr. Crapo's] plea effectively conceded he had contributed to the success of every burglary to which he had been tied by the discovery of that property and, therefore, had contributed to the successful theft of all the property taken in those burglaries by his willingness to receive and conceal portions of that property. That is to say, the extent of the loss suffered by the victims was as much a result of his illegal activities as it was a result of the thief's activities.

[¶ 18] We are unable to make the inferential leap suggested by the State. *Penner*, ¶ 11, 78 P.3d at 1048. Simply put, there is no support in the record for the State's position. There is no plea agreement to pay restitution for the burglaries. Mr. Crapo did not admit to the burglaries. The one charge against Mr. Crapo which might have provided legal justification for the restitution award, the conspiracy charge, was dismissed by the State pursuant to the plea agreement. We would uphold any portion of the restitution order supported by Mr. Crapo's plea, but given the lack of support in the record for such an award, we are unable to determine any proper restitution amount.

 [¶ 19] Finally, we should note that, because of the double jeopardy implications, restitution orders overturned for failure of proof will not be remanded for the purpose of relitigating the restitution issue. *E.g., Van Riper*, 999 P.2d at 648. Because the trial court improperly ordered restitution for losses not attributable to Mr. Crapo's criminal activity as defined by Wyo. Stat. Ann. § 6-3-403, and because the record does not provide any evidence to support a proper calculation of pecuniary damages that are properly attributable to Mr. Crapo's criminal activity, we must vacate the entire restitution portion of his judgment and sentence. We note that our decision does not preclude the individuals from pursuing appropriate civil claims against Mr. Crapo. Wyo. Stat. Ann. § 7-9-110(a).

[¶ 20] Reversed and remanded for entry of an amended judgment and sentence consistent with this opinion.